Good morning. I'm pleased to call Gregory Schoen appearing for the appellants Brookstreet and Stanley Brooks. The commission has conceded that the judgment cannot stand and the case must be remanded to the trial court. The question for this court is how much of the case goes back. We contend that the entire case must go back because the summary judgment was improperly granted. What I would like to say first of all is, or have a good focus on, is what this summary judgment motion was all about. It was the liability of defendants for, as control persons, of three primary violators, who were three of several hundred brokers at Brookstreet, who were alleged to have committed a 10B5 violation with respect to oral misrepresentations to some of their clients. Counsel, for purposes of our discussion, at least it would be helpful to me, if we divided discussion between the time when your client was still in a non-suspended state versus when he was in a suspended state. Because I view them as being quite different. When he was not suspended, I look at what the SEC's undisputed statement of facts or statement of undisputed facts was, I see what you all put on in the second time around before Judge Carter. And frankly, I'm struggling with where there is a genuine issue of material fact about the elements that have to be shown to find liability. Maybe quite different when he was under suspension. But let's talk about the time period when he was there running everything and had these people under his supervision. Well, I don't think there is any difference in his liability or the elements that need to be established for his liability. But one comment I would like to make on the timing is that at, I think it's page 48 of the appellee's brief, they say there is nothing in the record to establish when the violations occurred. They, for purposes of the argument they make with respect to the penalties, say, well, we assume that they were all made prior to the 2005 amendment to the statute. So if- I guess I don't find it helpful either if you won't distinguish between the suspension period and the non-suspension period. So you have two judges now that want that distinction. That might be a clue. Okay. Then let me address it this way. The allegation against Mr. Brooks is that he was in charge of Brook Street and therefore is a control person for purposes of liability here. It's our contention that his status, even in 2004, as this micromanaging president of the company, is insufficient to establish control person liability with respect to the violations that are charged against the primary violators. And for that, I would ask the court to look at Hollinger in terms of what needs to be established for control person liability. It is not a status-related offense. I think there is sometimes confusion with respect to offices of corporations and their control person liability. I would distinguish this case, for example- You're just saying that the fact that your client was president, CEO, etc., and owner does not in and of itself establish liability. I get that. Right. But by the same token, does that not color our view of what he did in his role of dealing with these brokers, these salespeople? Well, what did he do with respect to these brokers? He did nothing. That's not what the record shows, counsel. Well, I believe it is. The record, for example, does not indicate that Mr. Brooks was having sales meetings every morning saying, go out and misrepresent these CMOs to your clients. Why would that be necessary? He brought in the program. He had the contact. He hired club poppers. Well, the point there is that nobody alleges, and it is not claimed in the summary judgment motion, that there is anything wrong with the CMO program in and of itself or with popper in and of itself with respect to this motion. This motion only relates to these three individuals who misrepresented him. Because they didn't bring in more of the salespeople who defrauded victims with selling them these CMOs, in which case your client would have been possibly liable for more money, that we can't look at three as representative of what happened? No, you can't, Your Honor. What case says that? Well, what is inferences? I don't think there's any case that says to be a control person that you have to sit next to the desk of the salesperson and monitor their actual day-to-day, minute-to-minute sales. Well, I think that's exactly what Hollinger does say. Because it says in Hollinger, summary judgment was granted in favor of the employer in that case, who was the actual employer of the embezzler. And the court granted summary judgment in his favor because there was no evidence that the employer exercised actual power and influence over the primary violator's wrongful conduct, the embezzlement. That's exactly what Hollinger says, that in order to establish control person for a non-broker-dealer, I'm not saying anything about Brook Street. Brook Street is a control person without question. Mr. Brooks is not a broker-dealer. He is only the chief executive officer of that broker-dealer. And so if you look at Hollinger and that language in Hollinger, it is insufficient for simply the status to create control person liability. Okay. I guess what's not helpful to me here is that I think that first you're looking at just because someone's an employer, no, that doesn't immediately establish that they're a control person. But it doesn't mean any employer cannot be a control person. Then when I'm next hearing you, just because he's suspended, therefore, it must follow that he's not a control person. I don't think there's any case to that effect. So are you saying that when someone's suspended, as a matter of law, they cannot be a control person? No, what I am saying is that for summary judgment purposes, control person liability is an intensely factual-based issue that needs to be decided on all of the facts. But what you're saying is it's factual so it always has to be decided in a way other than summary judgment, and that can't be right. What I'm saying is that on the facts as presented here, where Mr. Brooks presented a detailed declaration as to what he actually did and did not do with respect to these violations, establishes genuine issues as to whether he controlled these primary violators. All right. What's different about the suspension? Is the analysis the same when he's suspended? Well, it just adds to the lack of connection between Mr. Brooks and the primary violators because he had absolutely no control at any level with respect to the primary violators. If he wasn't in control, then who was? The direct supervisors. I see. He didn't control the direct supervisor. There were several levels of management at Brook Street. This was a company with several hundred employees. I understand that. But the reality is if you have somebody that can control all the levers of power, and he can name, fire, discipline anybody in the chain of command, he was said to be involved in day-to-day activities, hands-on, minutiae, according to the record. I guess I'm a little puzzled by your defense. It seems like you're saying because the organization chart says this, and he says he wasn't involved in anything direct with CMO, which is contrary to some of the evidence, that somehow we can lay it off on this supervisor that he selected. Is that really your position? Well, it's not before this court as to who to lay responsibility off on. The question is, is Mr. Brooks a control person? And it's a factual issue. It's a factual issue. But I guess what we deal with here is whether there is a material fact when you take evidence that is introduced on both sides, and even if you take your client's statements on their face, whether it still shows that he is a control person. That's really what we're looking at here. And what I'm struggling with is the fact that it seems like you're saying that, you know, he was the owner. Yeah, he controlled everything in a corporate sense. But because he wasn't the broker-dealer, it's somebody else's fault. He has no liability for that. I don't think the cases say that, do they? Well, I think Hollinger does say that. And I think Coffey also says that, that you don't look to the status of an individual. No, not that alone. You look at what the facts are and you look at what the person did. But the fact that he has this ownership and control position from a corporate perspective and he has an M.O., if you will, that showed he brought the program in in the first place, was constantly dealing with these people, talking to them, encouraging them to do this, do that, and so on. You're saying that that doesn't make him a control person. What if they had said to him, you know, Mr. Brook, I don't care what you say. I'm not going to do what you say. Do you think they would have remained employed? No. Of course not, because he could fire them, no problem at all, right? That's right. He had no knowledge of this fraud that was taking place. He gave no direction to the misrepresentations that were taking place. That's the issue. So you're saying that if a person has all of the ownership and control in a corporate sense that Mr. Brook had, that if he has no knowledge that the SEC can prove, even though there's things going all around and he's benefiting directly from all of this, that he has exculpated under Hollinger? Well, yes, and perhaps the other way to look at this is let's say that the SEC has established control person liability in the sense that you are framing the question. Then we go to the issue of does his good faith defense and his lack of responsibility for the violations, did we raise genuine issues with respect to that defense? Absolutely. Is he entitled to even claim a good faith defense under the case law? Absolutely he is. He's entitled to under the statute. That's what the statute, what 20A says. Because I'm confused about your argument because in the district court's opinion, the district court says several times that the parties do not dispute that SEC has established a prima facie case, that Brooks Street and Brooks were controlling persons of the primary violators. So the district court seems to assume that you conceded that, but you were relying on the good faith defense. We conceded certainly that Brooks Street was a control person. The district court says that you conceded that Brooks was. Well, we never conceded that. What we said is assuming arguendo that you find that he was a control person, then we go to Let me just tell you what the district court says. In addition, the parties do not appear to dispute that Brooks was a control person given that he had the power to direct Brooks Street's corporate actions, including the firm's policies and management as they related to the primary violators and was intimately involved in Brooks Street's day-to-day operations. Is he wrong? Tell me what- Yes. So- The entire position we took was that he was not a control person, that Mr. Brooks was not a control person. Well, what evidence is there in the record on that that shows he was not a control person? For purposes of reliability, he was not a control person within the meaning of Hollinger, and all of the things that he said he did not have control of, he- How did the district court clearly err in saying that he was a control person under Hollinger? Because we raised genuine issues of fact with respect to that in connection with going beyond the micromanager vague assertion by the commission. He declared what his actual role and what his actual management responsibilities were and set forth the distance between him and the actual violators and established it that way, that there were genuine issues. Do you agree that if he is shown to be involved in the, in quotes, day-to-day oversight of activities that violate securities laws that have been deemed to induce the violation, that under Howard he's not entitled to the good faith defense? If, if, you don't agree to those facts, I understand that. But if that were the case, he's not entitled to the defense? No, I agree. Under Howard? I'm not sure I'm familiar with which Howard case. It's at 225 Fed Third at 1065, if you want to look it up. Okay, I do not have that case in mind, Your Honor. Okay, that's fine. You might also look at Nordstrom Inc. v. Chauvinson at 54 Fed Third, 1424. Your Honor, may I say a word about the big penalty phase? You may, but why don't you do it on rebuttal? Okay. Because I have a few questions to ask the SEC about that. Okay. Thank you. Thank you. Good morning. Good morning. May it please the Court, my name is Christopher Pack, and I represent the Securities and Exchange Commission in this matter. Can you address what Judge Wardlaw just read about that the parties weren't disputing certain things and counsel for the appellant said, yeah, we were? Well, I think what's going on here is that there is no dispute between the parties as to the underlying facts. That is, the SEC set forth evidence that certain events occurred. And this is not a case where the defendants come back and say, no, those events didn't occur. It's he said, she said. Or there's a dispute as to, you know, whether there was a meeting in April 2006 or what was said at that meeting. Everybody agrees, for instance, that there was a meeting in April 2006 at which certain registered representatives told Mr. Brooks that there was a scam going on at the firm. The question, Brooks' counsel, however, contends that he has raised a genuine issue of material fact when he questions the legal conclusions that should be drawn from the fact that that meeting took place. For instance, he says, I was suspended during April 2006. So even if the meeting took place and I can see that it took place, then I can't be a controlling person. Now, whether. Well, but would you agree? It just does seem that we have to separately analyze when he was there and when he was suspended. I would say that Mr. Brooks is a controlling person during both periods. Well, I know that's what you say, but this is summary judgment. So is the evidence different when he, when he was suspended, he wasn't in the same position that he was in when he was not suspended. That is certainly a case. There are two salient distinctions between the two periods of time. What was he suspended from doing? What did the suspension order say? The suspension order said he was suspended from acting in a supervisorial capacity over the registered representatives. That is a FINRA term. And I acknowledge that it is. What does it mean? Supervisory capacity? That is a question that I. Can you answer it? I asked FINRA. Answer the question. While I was preparing the brief in this case, because I anticipated that this argument would come up. I just want to know the answer to the question. What is it? FINRA told me that they judge that matter on a case by case basis. FINRA would not provide. This is a FINRA term. Holly, aside from this case, I have known. He kept the titles of president, CEO, and chairman of the board, right? Yes. Did anything prohibit him from de facto continuing these programs, just going into work every day and continuing the CMO program? He could have stopped the program, right? Exactly. Our point is that, for instance, he probably could not have gone to look over the shoulder of a particular registered representative and say, well. Which he wasn't doing anyway. Which he wasn't doing. Although he did testify that he was a micromanager. He did a few of these things. I think the thing that strikes me about this case is that there's this meeting in April 2006 where he's told there's a scam and there's a fraud going on at the firm. Well, he also received your document in 2005, right? Right. But during the period he was suspended, he received notification from a registered representative of a fraud or a scam at the firm, and he does nothing except turn the matter over to other officials. Didn't he hire his daughter and bring her in as the general counsel? I'm not certain about that. Yes. I think that's in the record. How familiar are you with this record? My point is that, and this goes to Judge Smith's point that he made to my learned friend, that there might be a difference between the two periods. During the second period, when he was suspended, he received notification that there was a fraud going on, and he did nothing. And he should have done something notwithstanding the fact that he was suspended. He could have gone to FINRA and said, look, I've got this problem. Could I get relief from the suspension so I can deal with the problem? He didn't do that. He didn't even try to do that. As you point out, Judge. Okay, but then we still have to look at the suspension period. If he couldn't do anything at that time, but he could do something before, that's a fact that's different in those periods of time for summary judgment. It certainly is different for purposes of summary judgment. But what I'm saying is that even during the suspension period, because of this very specific notification he'd received that there was a fraud going on, at that point it was incumbent upon him not just to put his head in the stand, but actually do something. And if he thought doing something would violate the terms of the suspension, he could have gone to FINRA and said, look, I have a problem here. I need to deal with this. May I please be relieved of the suspension? Alternatively, he could, in his capacity as president, CEO, chairman of the board, undertaken a broad policy decision, which would be to stop the sale of CMOs to his customers, period, until the matter could be cleared up. And arguably he could have defended himself by saying that's not a violation of the bar, that's a policy decision, it's not a supervisorial decision. Let's try it this way. What did Judge Carter say about the significance of the suspension? I'm afraid I don't have my finger on the exact statement that Judge Carter made about the significance of the suspension. I mean, someone who doesn't know much about business might think that that meant he couldn't do anything at all or continue or have any power within the firm. But people who have dealt with businesses where some people have been suspended for certain things might have a different understanding of that. Well, there are two kinds of suspensions. You could be suspended from being a participant in the firm at all. You just have to know. He still received profits, right? Yes. He still profited from the en la pole trade. Right, but you couldn't be suspended from making any policy, taking any decisions at all with regard to the firm. There's a broad suspension that's possible. And then there's this narrower suspension, the one that was actually imposed in this case, which was, well, you can continue to be involved in the firm. Say if he wanted to go to a bank and say, I want to get a loan for operating expenses for my firm, he can do that. That would be fine in terms of the suspension. What he couldn't do was supervise the registered representatives because what he was suspended for was for failing to adequately supervise them. So FINRA said you can't supervise the registered representatives until you take a test. You serve your suspension, you take a test, you re-qualify, you show us that you know how to supervise registered representatives, and we'll let you do it again. Can we back up for just one second again? Your opposing counsel indicated when he first came to the podium that the SEC agreed that the judgment as entered cannot stand. Is that correct from your perspective? And if so, what part of the judgment does not stand from the SEC's perspective? The commission we made, the concession we made was only as to remedies, not as to underlying liabilities. So our view is that what is to be corrected here is the remedies and not the liabilities. Is that the disgorgement issue? Yes. So what are you asking this court to change in its judgment? What are you conceding is wrong in this? The commission no longer seeks disgorgement. The commission no longer seeks prejudgment interest. And the commission seeks only the reduced amount of civil penalties, which I believe is $6,840,000. Have you gone back to Judge Carter to get this judgment modified? No, we have not. Do you need to do that? We think that this court could reverse the judgment insofar as disgorgement and prejudgment interest was aborted and could reduce the amount of civil penalties without going back to the district court. On what basis does your concession allow? The mathematics. I know your mathematics are wrong. It was miscalculated. Yes. Okay. With regard to the civil penalties, the mathematics, well, there were a couple of errors. One was the mathematics. Another was there was a question as to the date as to which the amount of the civil penalty was increased. Why did you agree? You know, Judge Carter actually gave these folks two bites at the apple on the summary judgment issue. And you fought hard. They fought hard. You have very, very substantial penalties for what you view as a very serious violation. Is it your point that you're agreeing that there will be no more prejudgment interest and no disgorgement just because there was a miscalculation or because you've changed your view of the seriousness of the offense? No, I think the problem here is with regard to disgorgement, the difficulty is that there were numerous registered representatives, and the record on summary judgment contains evidence as to the misrepresentations made by three of the registered representatives. But we had to get ready on all of this. Pardon me? We had to get ready on all of this. We had to hear this on the street when appellant's counsel gets up. Wouldn't, if you're not, why haven't you advised any court of this? I mean, we got ready like we're reviewing what the judgment is here, and now you're telling us, well, we're not even disagreeing with part of it. Did you advise this court of that, that you would change your position? In our brief, we explained that we had determined that the summary judgment record as it stood was insufficient to support the finding of disgorgement. Okay, now that's what I'm focusing on. The pre-judgment interest is one thing, but you're saying that what was found here was not sufficient to support disgorgement? Well, the district court's theory of disgorgement was that every registered representative selling CMOs was committing misrepresentations, and there were hundreds of them. And because revenue from the CMOs was, I believe it was roughly 10% of the firm's revenues, the district court ordered disgorgement in the amount of 10%, the corresponding number of Mr. Brooks's salary. The idea was that all of the registered representatives were making misrepresentations. That's a certain portion of the firm's revenue. Therefore, your salary should be disgorged to the extent it was derived from those illicit proceeds. And the flaw we identified on appeal was that statistically speaking, the activities that three people undertook are not representative of the activities of several hundred. You know what troubles me about this, counsel? These are serious charges. Mr. Brooks is a distinguished guy, has no previous record of anything wrong. The SEC is admitting that a very important part of this, i.e. that there were a whole bunch of people involved in this, turns out to be false. There are only three. And yet this case was decided on summary judgment where there are no material facts at issue. Why shouldn't we send this back to Judge Carter to have this reconsidered by him, either on a new motion for summary judgment or on a trial where the actual facts are involved before him? It doesn't sound like all of the facts that were essential to his determination were correct. Well, I think there are two answers to that. One is that we don't concede that the other 800 or 900 registered representatives were also making misrepresentations. In fact, we've alleged that they were, but just the summary judgment doesn't. But there are no proof. Exactly. So you're not really giving up disgorgement. You're just saying for purposes of summary judgment it should be reversed, and then you're going to go back and relitigate it. Right. We think the summary judgment record is insufficient to support that remedy, and so we're no longer – Any of it? Just the disgorgement. Well, why would it support any of it? I mean, disgorgement is a pretty automatic thing if you have a serious violation, and if you have a really proven violation by a control person where there's a lot of money involved and a lot of people were cheated through misrepresentations, that's almost standard fare to require disgorgement. Now you're saying that's not going to be required because there's no proof as to these hundreds of people. You've got it as to three only. Did Judge Carter know that that's all you had? Yes, he did. Or did he think there were hundreds of people involved? Well, the summary judgment papers contain evidence with regard to the misrepresentations that were made by three and only three of the registered representatives. So you're saying – but it also referred to others, right? It just didn't have specific detail. But we didn't introduce an expert to explain that these three were statistically representative of what was going on with the rest. The record is simply mute. But is it fair to say – I mean, Judge Carter is a real practical guy, former Marine, all that sort of thing, and if you're telling him, look, there's this – here are these three really bad people here, and they did all these horrible things, and there are hundreds more of them just like him who then had evidence to back it up, and nobody refutes that. Maybe that's what he bought. Is that not what we're dealing with here? Well, I think it's important to remember that we're dealing with this in a summary judgment context. If there had been a trial here and we had introduced evidence – Well, that would be different. That would be helpful to you, perhaps. But in this case, in order to sustain the summary judgment, you have to show that there are no material disputes of fact. And here, right off the bat, the SEC agrees that no disgorgement is appropriate because instead of being hundreds of people as to whom evidence was introduced, you've only got three that may or may not have been clear to the judge. Is that fair? Yes. Okay. But on summary judgment, we admit on summary judgment that an inference could be drawn against us that these three and only these three were making misrepresentations. We think that's somewhat improbable, and we'd be prepared to show at trial that, in fact, there were many more people making these misrepresentations. But we admit that on this record, in a summary judgment context, an inference could be drawn that these were the bad apples, just these three, and everybody else in the firm was completely clean. But the burden's yours, is it not, to sustain a summary judgment of this nature? Well, we think that the – it certainly is our burden, and we think the record may be insufficient as to disgorgement, but it is sufficient as to the injunction and the civil penalties. That's what I'm having difficulty with this, why you're not entitled to disgorgement but you are entitled to those other two. Aren't they usually part and parcel of what the SEC gets? Not necessarily. Let's assume for the sake of argument that these three people and only these three had committed misrepresentations and that Mr. Brooks was the control person for purposes of determining liability. Let's assume that it could be shown beyond a moral certainty that all the hundreds of other registered representatives weren't doing anything of the kind. Even under those set of circumstances, it would still be proper for us to say Mr. Brooks was the control person of these three people. These three people committed violations. Agreed. If that is the case that you had presented, that's right, perhaps. But I guess what I'm struggling with here is that does not appear to be the case you presented. I think that that, in fact, is the case that the summary judgment evidence supports. You're saying that the judge could infer that based upon what you presented. What I'm saying is that there is no other reasonable inference other than these three people committed these misrepresentations with Sienta and that Mr. Brooks was the control person over these three people during both periods, 2004, 2005, and 2006 after his suspension. Therefore, Mr. Brooks can be enjoined from further violations of securities laws and Mr. Brooks can be ordered to pay civil penalties. That's what I don't get. What teeth is in that injunction? I mean he's already supposed to not be violating securities laws. What do you get by enjoining him against – just the possibility of contempt? I mean what is – what's the teeth in that? Well, the practical effect of this kind of injunction is to make it very difficult for someone to engage in the broker-dealer business. So they can't get license? Have his and Gold Coast's registrations with the National Futures Association been revoked? I believe they've been withdrawn. Withdrawn? Yes. What is withdrawn versus revoked? Yes. Well, what's the difference between withdrawn and revoked? Practically speaking, there's no difference. The point is that he would have great difficulty getting them reinstated if he decided to go back into the business. Because he has this injunction. So if he didn't have the injunction, he could go back into the business again? That's correct. Okay. And this applies to all other sorts of required licenses that you need to register with a broker? Exactly. The many licenses that are required to engage in various activities in the securities business. Being enjoined is a serious, serious barrier to being a licensed broker. So it's essentially his livelihood is gone. Well. That livelihood. The broker-dealer livelihood. I want to get back to the point of the civil penalty system. You're over your time. Thank you, Your Honor. Thank you. One brief point on the liability. There is no claim here that there was anything fraudulent about the CMO program. The violations that were alleged was that the brokers misrepresented the suitability of these investments for particular customers. Some customers were clearly suitable to buy these programs. And there was nothing wrong with it. The SEC never charged that there was anything wrong with the CMO program itself. In other words, if you're a highly sophisticated person, somebody that meets the legend in the front of the offering circuit, or whatever it was that was circulated here, that would have been okay. The problem was that the broker said or implied that the government backs these up and everything's great. That was the problem from your perspective. That was the violation. The allegation. Even though Brook Street itself had given all of the disclosures in the offering material. With respect to Remedix, I heard for the first time today that they were withdrawing their claim for disgorgement, as I understood it, they intended to go back to the district court. But you got up and you said that they were making concessions. What were you talking about? That the judgment could not stand, that the disgorgement could not stand and would have to go back for a trial. Okay, so what did he say that was different than that? Maybe I misunderstood what he said. Well, their brief, starting at 41, says exactly what their position is as to the injunctive relief, the disgorgement, and the prejudgment interest. They want that vacated. The civil penalty should be reduced, but we can't reduce them. We would just have to vacate everything except for the injunction if we were to roll in favor of the SEC. And send it down, too. Maybe I misunderstood counsel. I thought he was withdrawing. Did you read his brief? I read his brief. That's what you're referring to, right? That's what I was referring to. Right. When he stood up. Well, I don't think he was that clear. I think what we have to do is go based on the brief and on Judge Carter's order. Then the penalties is, you know, our Eighth Amendment. Proportionality is the key statement. Right, and that's going to be vacated. I gather your point is the government's case is unraveling on the remedies. This is a summary judgment. It really ought to go back to the district court to be retried or have a new summary judgment and deal with the facts as they are. And on this. Yeah, you think you're going to win if that happens, right? Inferences have to be drawn in our favor and send it all back to the court, unfortunately.  Thank you very much. CCC versus Brooks Street and Brooks is submitted, and we'll take up Smith versus County of Los Angeles.
judges: WARDLAW, CALLAHAN, SMITH